Thomas C. Frankridge on behalf of the appellants. Here's some 16 years and 9 months. We're still arguing over the basics of the Americans with Disabilities Act and the fundamental right for a party that's agreed to pursue litigation. In this instance, it's Mr. Molski with the man who I touched also, known as the Evergreen Dynasty. Mr. Molski has not been vexatious. He's had upwards of 400 lawsuits that he's filed over the years. How many of them counseled for the plaintiff? I don't know. Were you counseled in a district court? I was. All right. How many of those cases did you or your firm handle? Approximately 234. And prior to filing any of these, as the record indicates, prior to filing any of these lawsuits, Mr. Molski was a disabled person. He was a guest. He was an invitee. He had complaints of the public accommodation. I personally went out to every one of the public accommodations and confirmed the architectural barriers that existed there. We had an expert do a subrosa to further confirm the existence of the architectural barriers. The causes of action that are used in California by the Americans with Disabilities Act is the fundamental law, followed by Civil Code Section 51, which is the Interim Civil Rights Act, Civil Code Section 54, the Disabled Persons Act, and Health and Safety Code 19955, which provides that there be sanitary facilities for the disabled and that they also be open to the public. On Mr. Molski's actions that he brought, the vast majority of those were against different defendants. They were against different public accommodations. There were landlords and tenants that were involved. And the reason... You may want to get right to the reason the Court ruled against your client. I think everybody's disagreeing. The reason the Court ruled against the client, he, Judge Raffiti, has a bias and he's supposed to... No, but the reason he said in this record, and that's what we're going to decide on, we're not going to... Well, he used the multitude of Americans with Disabilities Act cases. Counsel, you know the case. He said no one of these cases ever went to be decided on the merits. And now that's the reason he gave, and maybe you want to tell us why that's wrong. Well, it's insufficient for a number of things. As Judge Magistrate Trumbull said, in the case of Molski v. Rapazzini, just on that issue, is that the majority of cases that are modern litigation, the cases are settled. How many of these were tried? Of that 234, I think at the time, possibly one had been tried. And one reason that the cases are settled is because, in fact, they are meritorious. And, in fact, they are the most egregious cases. The most egregious by virtue of the fact that the cases we litigate are the ones where, and we say egregious, there's signage problems, there's parking problems, there isn't any parking. You can't get into the public accommodation. And once inside, almost always, the restrooms, the men's restrooms, the women's restrooms, are not accessible to the disabled. Those are the most egregious cases. You can't park, you can't get in, you can't use restrooms. Counsel, could you answer a question? What bothers me about this case, and about the reasoning of the district court, is that, in part, if someone has valid ADA claims, it seems that it's desirable that they should be able to be a serial plaintiff. However, the district court, in this case, challenged the fact that there were such parallel allegations. Often, several suits filed, maybe five suits filed in three days, or three suits in one day. And it seems to me that even if there's a valid ADA claim, it's still harassing if the damages are pumped up with a phony story. And that's what I read the district court as saying, was the state of finding that even though there might have been valid ADA claims, that that was overweighed by the fact that there was a purpose here to extort settlements. All right, let's go to the purpose to extort settlements. Each of the justices, you've seen the demand letter for injunctive relief that went to the defendants at the time the complaint was served. It explained to them what the architectural barriers were. It explained to them how they could take care of the architectural barriers. And it told them it could get done within 90 days, of which, you know, almost none of them moved forward on. Now, in terms of the causes of action, those causes of action are always going to be the same. The, if we're taking the egregious cases, and those are the ones I just explained, they're going to be the same. There's nothing there to talk about the number of cases that Mr. Molsky could have brought, but to, is not. I'm sorry, but is it really believable that Mr. Molsky, if he goes to one establishment and the bathroom's not accessible, and he transfers himself, and he injures his arms, injures his upper body, that twice later that day, that he would attempt the same maneuver and injure himself the same way? And how do we deal with that? Also, if the district court makes a finding, this is an abuse of discretion standard in general as to whether such an order should be entered. But are there factual elements of what the district court determined that we have to review for clear error? The court did not have any factual basis for it to make its determination that these were somehow contrived. The district court apparently did not read or gave no weight to Dr. Thomas Hedges' declaration and opinion that persons with disabilities that are using wheelchairs suffer a repetitive, cumulative, and continuous trauma to their upper bodies, because they only have the use of their upper bodies, each and every time they encounter architectural barriers. Now, we've never said, we've never said that you take the last restaurant that he goes to, and let's assume for a moment that there's rotator cuff injury and it would require surgery, that that restaurant would be responsible for all of his injuries. The point is, and the point that the public needs to know, and the point that the court needs to know, is that every time people with disabilities run into these different types of architectural barriers, steep ramps where you're trying to wheel into a steep ramp, open the door, maintain the brakes, and not have the wheelchair swing around, is that you're putting a lot of stress and strain on the upper body. That once inside, and you attempt to utilize a restroom, that again, there's more stress and strain as far as being able to get in where the door pressure is great, or the doors are narrow. But here, just based upon the pleadings, the court makes a determination without taking any evidence of the exact stresses and strains that occur to Mr. Molsky. Better let you say- If a person put their hand on a burner, on a stove, and they burned it, they wouldn't be likely to put their hand back in the exact same place, two or three hours later. And I read what the district court was saying as part of that, that he just didn't believe the tale of injuries. Well, the court can not believe the tale of injury, but you have to put it in context of everything that Mr. Molsky encountered at each particular public accommodation. If it be the lack of parking and having to park someplace else and travel further, if it be, because it doesn't just state that it's the restroom. It's encountering the architectural barriers that haven't been removed causes the repetitive and cumulative stress and strain to the upper body. All of that would have to be looked at in each and every case. I'm going to have to stop you. I recognize you're responding to an answer to a question, but what we're going to decide the case on is the record. And I'd hoped when you came, you were going to tell us, you were going to deal with what the court has found, and you didn't. Well, I'm dealing with what the court has found. The only thing that the court can say in terms of vexatiousness is the number of cases. The only thing? How about that letter that went out from your outfit? See, nobody's about to do anything. I'm glad that the court brought that up, because it says this is 1148 of the excerpt of record, and this is the dynasty, that the purpose of the letters is to tell them to read the preliminary factual allegations, which quickly assess the barriers and determine the cause. That's in the record. Believe it or not, we've read it. Okay? All right. No place can anyone point out to me that there was an attempt by that letter to extort money. No place. That talks about injunctive relief. You know, you've used your time. Thank you very much for your argument. Good morning, Most Honorable Court. Robert Appert, appearing for the respondent, Evergreen Dynasty, DBA Mandarin Touch Restaurant. In deciding this matter, the petitioner points out that the key element of the judge's decision was whether the filings were frivolous or harassing. And in coming to a conclusion and finding that the filings were frivolous and or harassing, the court reviewed 223 of Mr. Frankovich's 2004 filings. You know, I expected his counsel to say to you, and I think you'd have to agree, that frequency isn't the test. If he's being discriminated against often, he's got frequent complaints. So that isn't the test. I expected him to argue. I expected him to go then to say what the record shows. And what the record shows here is that he had a number of complaints for the same day, which maybe he went to all those places on the same day. Nobody can rule that out. But the language was quite similar in each one of the cases. Now, what here is a basis for finding that his litigation is vexatious, other than the fact that it was frequent? Well, and you pointed out the second part of that as well, Your Honor, which I'm sure you would suggest is not a matter of the similarity of the complaints. It's the second part of it, that the facts were very similar. We expect the cause of action to be similar, because if a person encounters barriers, then, as the Court has stated, that one can expect that a plaintiff may file more than one case. But when you look at the facts, it's the facts being similar in each and every case as well, as Judge Rafiti pointed out, down to the typos in some cases. I think that's where the judge took the record as a whole. I presented all 223 cases that actually, more than that, all the cases. Well, I'd hope counsel had pointed out to you, but he didn't, and so maybe I have to point it out to you. The problem that somebody's got to see when they do it is there was a frequency, there was a failure to follow through. The complaint was filed, and there was a failure to follow through, and a period of time passed. Are those the kinds of things you're prepared to talk to us about today? Well, my client in particular, when they first came to me, had problems with the complaint, because they didn't believe it happened. It's a mom-and-pop restaurant. They have 12 tables, and they believed right from the beginning that Mr. Molsky's factual allegations were contrived, and that's what started this whole procedure. That his facts were just not credible, because of- Can you number the things in this record that would support a finding of vexatiousness other than frequency of filings? Well, there are a number of other- Decide it. One, two, three, four. Tell us what they are. There are complaints in which Mr. Molsky was not able to access the premises. He could only look helplessly at barriers, and even in those cases where he did not access the premises, he still claimed bodily injury. The settlement agreements themselves speak only to ADAC. They don't actually go into what the appropriate remedial standard would have been. As the amicus brief points out, it could be either- The standard may differ depending on whether we're dealing with new construction, old construction, and the settlement issues deal only with ADAC, which is not the applicable standard. In a lot of these settlements, future plaintiffs could come along and say- Take a look at the same establishment and say, well, it's nice that you replaced all of these items, but that's not the appropriate standard. And I'm filing another lawsuit, and you'll have to redo everything that you've done before and comply with the appropriate standard. So there are a number of factors in the record that would support the judge's finding. Counsel, I have a legal question for you here. As I understand, we review for abuse of discretion, but is there any element of what we're reviewing here that we review for clear error? The judge recited that he was making a finding about a purpose to extort settlements, but the judge didn't hold an evidentiary hearing where he heard witnesses. He looked at papers, at complaints. What does our precedent say as to whether there's any of this that we review for clear error, or whether it's all just abuse of discretion? Well, the judge did give the plaintiff substantial time to respond, and as the court is well aware, that a the parties created a substantial record in this particular matter. So even in absence of an evidentiary hearing, if that would have been necessary, it seems like there is an adequate record for the judge to make his findings. So then do we review those findings for clear error or not? My understanding would be that the appropriate review is abuse of discretion. Another legal question here. Let's assume that every single case brought is a valid ADA claim in the sense that there was some non-compliance with the ADA. Can the litigation still be harassing if damages are exaggerated, or if there are other elements to it in terms of an improper purpose? I think it can be, because as the court discussed earlier, all of the cases are very similar. And it stretches one's credibility to think that Mr. Molsky would make transfer after transfer onto a toilet, particularly when he has testified in depositions that he uses a catheter. And in order to relieve himself, he merely needs to empty his bag. It seems to me, and I think it also occurred to Judge Raffitti, that it's not likely that the person would continue to make transfer after transfer, or try to wedge himself through a narrow passageway. But rather, even if the claims are valid, he would determine that by measuring the passageway, he would determine it doesn't meet ADA standards. And instead of actually trying to wedge himself through the door, he would eventually allege that he wedged himself through the door and injured it, scraped his knuckles. So you could make valid ADA claims, I suppose, and yet contrive the facts in such a way to create a state cause of action for personal injuries. And I believe that's what happened. What significance do we give the fact that the district court purported to apply the Second Circuit's test from Saper, rather than the Ninth Circuit's four-factor test from DeLong? Well, one of the cases that plaintiff cited, in support of his claim, the Rapesee Winery case, said that the standards were similar enough. And if you look at the record, it is sufficient to support a finding under the DeLong case. Adequate notice was certainly given. There is clearly an adequate record. The- Your time is up now, but I do have a question I want you to, I'm sure Judge Ferris will not object on this. What is the practical impact of the prefiling order? Now, can, can Mr. Molsky still file three lawsuits in a week, if he wants, with some judge approving the filing? In other words, how does it work? Files a complaint. Does it go to a judge in the district? Do they have to approve it, or what? Well, I think that goes to the matter, or to the order being narrowly tailored, which was the fourth point in the DeLong case. The orders are attached to the plaintiff's filing, and then brought to the judge's attention. That was one of Judge Rafiti's concerns, that these cases were settled so quickly that a district court judge may not be aware of the serial findings. And so the orders were attached, and the court can decide to file the complaints. But it's at least put on notice of all the other serial filings by Mr. Molsky. And the court has the discretion to act accordingly. So the end result is Mr. Molsky can still continue to file cases. He just needs to attach the order and have a judge approve the filing. Thank you, counsel. Thank you. The case just argued is submitted. The court will now hear Molsky versus LeVon Investments. Thanks.
judges: Farris, Gould, Cff, Duffy